1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10   UNITED STATES OF AMERICA,                    CASE NO. 13cr3579-GPC
                                                   Related Case No. 15cv1232-GPC
11                      Plaintiff-Respondent,
                                                   **ORDER DENYING PETITIONER'S**
12        v.                                       **28 U.S.C. § 2255 MOTION TO**
                                                   **VACATE, SET ASIDE OR**
13                                                 **CORRECT SENTENCE**
     HERLIN CARBAJAL-
14   HERNANDEZ,
                                                   [Dkt. No. 24.]
15                      Defendant-Petitioner.

16

17                        **I.  INTRODUCTION**

18        Herlin Carbajal-Hernandez ("Petitioner") filed a Motion to Vacate, Set Aside or

19   Correct Sentence under 28 U.S.C. § 2255. (Dkt. No. 24.) On June 25, 2015, the United

20   States ("Respondent") filed an opposition ("Opposition") to Petitioner's Motion. (Dkt.

21   No. 26.) For the reasons set forth below, this Court **DENIES** Petitioner's Motion to

22   Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

23                 **II.  PROCEDURAL BACKGROUND**

24        On October 1, 2013, Petitioner waived indictment and was charged by a criminal

25   information with being a removed alien found in the United States in violation of 8

26   U.S.C. §§ 1326(a) and (b). (Dkt. Nos. 6, 7.) On October 23, 2013, Petitioner pled guilty

27   to the information before the Honorable Peter C. Lewis. (Dkt. No. 12.) On November

28   5, 2013, this Court issued an order accepting Petitioner's guilty plea. (Dkt. No. 15.)

On December 3, 2013, the Probation Office filed a pre-sentence report ("PSR") recommending 42 months in custody, as well as 3 years of supervised release. (Dkt. No. 16 at 11.)[1] The PSR acknowledged that under section 5D1.1(c) of the United States Sentencing Guidelines, supervised release ordinarily should not be imposed on a deportable alien. (Id. at 8.) Nonetheless, it recommended a 3 year term of supervised release in this case due to "the nature of [Petitioner's] criminal record."[2] (Id. at 10.) On January 15, 2014, Respondent filed a sentencing summary chart in advance of sentencing, calculating the bargained-for 4-level departure for Fast Track and recommending 37 months in custody and 1 year of supervised release based on that departure. (Dkt. No. 18 at 2.) On January 24, 2014, Petitioner was sentenced by this Court to 24 months in custody and 2 years of supervised release. (Dkt. No. 22.)

On June 3, 2015, Petitioner filed the instant motion. (Dkt. No. 24.) On June 25, 2015, Respondent filed a Response in Opposition to Petitioner's Motion to Vacate, Set Aside or Correct Sentence. (Dkt. No. 26.) As of the date of this order, Petitioner has not filed a reply.

### III. LEGAL STANDARD

Section 2255 authorizes this Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." United

---

[1] Page numbers for docketed materials refer to those imprinted by the Court's electronic filing system.

[2] On March 15, 2012, Petitioner suffered a felony conviction in the Superior Court of California, Los Angeles, for Unlawful Sexual Intercourse with a victim under 16 in violation of Penal Code § 261.5(d). (Dkt. No. 16 at 5.) On August 15, 2012, Petitioner was removed to Honduras. (Id.)

States v. Timmreck, 441 U.S. 780, 783 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

## IV.  DISCUSSION

Petitioner challenges the 2 year term of supervised released imposed by this Court. (Dkt. No. 24 at 1-2.) Petitioner contends that the guidelines, as amended in 2011, "recommend against imposing supervised release in cases where the defendant is likely to be deported after imprisonment." (Id. at 1 (citing U.S.S.G. §5D1.1(c) at cmt. nt. 5).) Petitioner asserts that  supervised released is recommended to "provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." (Id.) Petitioner further asserts that this need is adequately served by a new prosecution. (Id.) Therefore, Petitioner argues that this Court "failed to take into consideration [§] 5D1.1(c) when it imposed" a 2 year term of supervised release. (Id. at 1-2.) Petitioner asks this Court "to reconsider that no unusual or uncommon circumstances exist which would have required the imposition of supervised release" and accordingly, asks this Court to "vacate the imposition of supervised release." (Id. at 2 (citing United States v. Cortez-Sanchez, 513 F. App'x. 668 (9th Cir. 2013)).)

Respondent presents three grounds for denial of Petitioner's motion. First, Respondent contends Petitioner has no standing to file the present motion. (Dkt. No. 26 at 2.) Respondent asserts that "[i]n order to file a motion attacking a sentence under § 2255, a prisoner must be in custody." (Id. at 3 (citing 28 U.S.C. § 2255).) Respondent argues that because Petitioner was released from custody on June 1, 2015, two days before the present motion was filed on June 3, 2015, he does not have standing to file a motion under § 2255. (Id.) Second, Respondent contends Petitioner's motion is barred by the "waiver of appeal and collateral attack" contained in the plea agreement. (Id. at 4.) Respondent contends Petitioner's guilty plea was "knowing and voluntary" because it was expressly stated as such in the plea agreement itself and because Petitioner entered into the Plea Agreement with the advice of his counsel. (Id. at 5.) Lastly, Respondent contends that regardless, the imposition of supervised release

1  was appropriate and reasonable to protect the public due to Petitioner's prior
2  convictions for violence and statutory rape. (Id. at 5-6.)

3  **A.     Standing to File a Motion to Vacate**

4       "A prisoner in custody under sentence of a court established by Act of
5  Congress claiming the right to be released upon the ground that the sentence was
6  imposed in violation of the Constitution or laws of the United States . . . may move
7  the court which imposed the sentence to vacate, set aside or correct the sentence."
8  28 U.S.C. § 2255. "Section 2255 motions, by the explicit terms of the statute, may
9  be brought only by persons 'in custody.'" United States v. Reves, 774 F.3d 562, 565
10 (9th Cir. 2014). For purposes of a § 2255 motion, a prisoner on supervised release is
11 considered to be "in custody." Matus-Leva v. United States, 287 F.3d 758, 761 (9th
12 Cir. 2002).

13      Here, Petitioner was released from prison on June 1, 2015, two days before
14 the present motion was filed on June 3, 2015, and is currently serving his two year
15 term of supervised release. (Dkt. No. 26 at 3.)[3] Therefore, Petitioner is currently "in
16 custody" and has standing to bring the present motion to vacate under § 2255.

17 **B.     Waiver of Appeal and Collateral Attack**

18       "'Plea agreements are contractual in nature and are measured by contract law
19 standards.'" United States v. Keller, 902 F.2d 1391, 1393 (9th Cir. 1990) (quoting
20 United States v. Read, 778 F.2d 1437, 1441 (9th Cir. 1985)). "A defendant's waiver of
21 his appellate rights is enforceable if the language of the waiver encompasses his right
22 to appeal on the grounds raised, and if the waiver was knowingly and voluntarily
23 made." United States v. Joyce, 357 F.3d 921, 922 (9th Cir. 2004). The court "looks to
24 the circumstances surrounding the signing and entry of the plea agreement to determine
25 whether the defendant agreed to its terms knowingly and voluntarily." United States

26 _____

27       [3] Petitioner has not filed a Reply or otherwise contested that he was released from prison on
   June 1, 2015, as asserted by the Government. As such, the Court presumes he is currently serving his
28 two year term of supervised release as required by his sentence, and as further indicated by the present
   motion to vacate, set aside, or correct his sentence of supervised release. (Dkt. Nos. 22, 24.)

1   v. Baramdyka, 95 F.3d 840, 843 (9th Cir. 1996). The court "must also focus [sic] upon

2   the language of the waiver to determine its scope." Id. "[W]hether the district court

3   informed the defendant of [his] appellate rights and verified [his] intent to forfeit them"

4   is also relevant. United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000). An

5   appeal waiver is unenforceable "if: 1) a defendant's guilty plea failed to comply with

6   Fed. R. Crim. P. 11; 2) the sentencing judge informs a defendant that [he] retains the

7   right to appeal; 3) the sentence does not comport with the terms of the plea agreement;

8   or 4) the sentence violates the law." United States v. Bibler, 495 F.3d 621, 624 (9th Cir.

9   2007) (citations omitted).

10   Here, Petitioner entered into a plea agreement with Respondent. (Dkt. No. 12.)

11   Petitioner's initials appear at the bottom right-hand corner of each page of the

12   agreement. (Id. at 1-11.) Petitioner's signature and the signature of his attorney appear

13   on the last page of the agreement. (Id. at 12.) Further, Section XV of the agreement

14   states that by signing the agreement, Petitioner "certifies that [he] has read [the

15   agreement] (or that it has been read to [him] in [his] native language)" and that he

16   "fully understands its meaning and effect." (Id.) Section XI of the agreement, entitled

17   "Defendant Waives Appeal and Collateral Attack[,]" states:

18   In exchange for the Government's concessions in this plea
    agreement, defendant waives, to the full extent of the law, any right to
19   appeal or to collaterally attack the conviction and sentence . . . unless the
    Court imposes a custodial sentence above the high end of the guideline
20   range recommended by the Government pursuant to this agreement at the
    time of sentencing. If the custodial sentence is greater than the high end
21   of that range, defendant may appeal, but the Government will be free to
    support on appeal the sentence actually imposed. If defendant believes the
22   Government's recommendation is not in accord with this plea agreement,
    defendant will object at the time of sentencing; otherwise the objection
23   will be deemed waived.

24   (Id. at 10.)

25   Additionally, section VI of the agreement, entitled "Defendant's Representation

26   that Guilty Plea is Knowing and Voluntary[,]" states that Petitioner "had a full

27   opportunity to discuss all the facts and circumstances of th[e] case with defense

28   counsel, and ha[d] a clear understanding of the charges and the consequences of th[e]

plea." (Id. at 5.) The agreement states that no promises were made and no rewards were offered in exchange for Petitioner's guilty plea, aside from those contained in the agreement itself. (Id.) The agreement also states Petitioner was not threatened and that he was pleading guilty "because in truth and in fact [he] is guilty and for no other reason." (Id.)

Petitioner entered his guilty plea in open court on October 23, 2013 before the Honorable Peter C. Lewis. (Dkt. No. 12.) In his finding and recommendation, Judge Lewis explicitly found that "[Petitioner's] guilty plea [was] made knowingly and voluntarily" and recommended the "District Judge accept [Petitioner's] guilty plea." (Dkt. No. 13 at 4.) Petitioner did not object, and this Court adopted Judge Lewis' findings and accepted Petitioner's guilty plea.  (Dkt. No. 15.) This Court sentenced Petitioner at the low end of the Guidelines range and two years' supervised release. (Dkt. No. 22 at 2-4.)

Petitioner's plea agreement is enforceable because the surrounding circumstances indicate the plea agreement was made knowingly and voluntarily. The plea agreement contained separate sections specifically addressing the knowing and voluntary nature of Petitioner's guilty plea and his waiver of appeal and collateral attack. (Dkt. No. 12 at 5, 10.) Petitioner signed the plea agreement and initialed each page. (Id. at 1-12.) Petitioner also confirmed these facts at his plea hearing before Judge Lewis. (Dkt. No. 13 at 2-4.) Further, Petitioner filed no objection to Judge Lewis' findings which indicates he agreed with the determination. Additionally, Petitioner was sentenced in accordance with the terms of the plea agreement. (See Dkt. Nos. 12, 22.) In sum, there is no indication, and Petitioner does not contend, that he did not knowingly and voluntarily enter the plea agreement and understand its effect.

Thus, this Court finds Petitioner is bound by the terms of the plea agreement and waived his right to appeal or collaterally attack the sentence imposed by this Court. Therefore, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct sentence.

1    **C.     Appropriateness of Supervised Release**

2          Even presuming the Court could reach the merits of Petitioner's motion, the

3    Court acknowledges it "ordinarily should not impose a term of supervised release in

4    a case in which supervised release is not required by statute and the defendant is a

5    deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c).

6    However, the Ninth Circuit has emphasized that the use of the word "ordinary" in §

7    5D1.1 gives the district court discretion to "consider imposing a term of supervised

8    release . . . if the court determines it would provide an added measure of deterrence and

9    protection based on the facts and circumstances of a particular case." United States v.

10   Valdavinos-Torres, 704 F.3d 679, 693 (9th Cir. 2012); U.S.S.G. § 5D1.1 cmt. n.5.

11         Petitioner relies on United States v. Cortez-Sanchez, 513 F. App'x. 668 (9th Cir.

12   2013), as support for his contention that supervised release was improper because the

13   court failed to consider § 5D1.1, and that "no unusual or uncommon circumstances

14   exist[ed] which would have required the imposition of supervised release." (Dkt. No.

15   24 at 1-2.) In Cortez-Sanchez, a prisoner "appeal[ed] from the district court's

16   judgement and challeng[ed] his guilty plea conviction" and sentence for reentry after

17   deportation. 513 Fed. Appx. at 668. The court found the prisoner had no grounds for

18   relief on direct appeal. Id. at 669. However, the court noted that "before [the prisoner]

19   was sentenced, the Guidelines were amended to recommend against the imposition of

20   supervised release in cases where the defendant is likely to be deported after

21   imprisonment." Id. (citing U.S.S.G. § 5D1.1(c) cmt. n. 5 (2011)). Therefore, "because

22   the record suggest[ed] that the district court [had] not consider[ed] section 5D1.1(c)

23   when it imposed supervised release," the court vacated the prisoner's term of

24   supervised release and remanded for further consideration by the district court in light

25   of the amended section. Id.

26         Here, Petitioner's circumstances were not "ordinary," within the meaning of

27   § 5D1.1, as Petitioner had three adult criminal convictions (excluding the present

28   conviction), including theft and false identification, terrorist threats, and unlawful

13cr3579-GPC

sexual intercourse. (Dkt. No. 16 at 5); see Ramirez-Ramirez v. United States, No. 10-CR-00897-LHK, 2015 WL 1544252, at *5 (N.D. Cal. 2015) (finding the petitioner's circumstances were not ordinary within the meaning of § 5D1.1 because the petitioner was already on supervised release for a prior federal illegal re-entry conviction and had significant family ties in the United States that indicated he would re-offend). Further, in its Pre-Sentencing Report, the Probation Office acknowledged § 5D1.1, regarding the imposition of supervised release for deportable aliens, but nonetheless recommended a three year term of supervised release due to "the nature of [Petitioner's] criminal record." (Dkt. No. 16 at 10, 12.)

Given the circumstances described above, this Court acted within its discretion to impose a term of supervised release as necessary to "provide an added measure of deterrence and protection based on the facts and circumstances of [this] particular case." See U.S.S.G. § 5D1.1. Petitioner's history of terrorist threats and unlawful sexual intercourse reflects a violent and criminal nature. An additional measure to deter and protect the public was therefore required to ensure Petitioner would not re-offend. Furthermore, Petitioner's reliance on Cortez-Sanchez is misplaced as it does not apply to the facts of his case. See Cortez-Sanchez, 513 F. App'x. at 668-69. Unlike the record discussed in Cortez-Sanchez, the record in this case does indicate that the Court considered § 5D1.1(c) in deciding to impose a term of supervised release, as the probation officer's recommendation of supervised release specifically included an analysis and application of § 5D1.1(c). (Dkt. No. 16.) Therefore, Cortez-Sanchez provides no support for Defendant's request that this Court vacate the imposition of supervised release.

Thus, for the reasons discussed, the Court finds no fundamental error or defect in its imposition of supervised release. See Timmreck, 441 U.S. at 783.

## VII. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. The Clerk of Court shall

1 │ close the case.

2 │ **IT IS SO ORDERED.**

3

4 │ DATED:  August 18, 2015

5

6 │ HON. GONZALO P. CURIEL
  │ United States District Judge

13cr3579-GPC